**In re Robert Lee BLACK, Debtor.**

**Larry STEWART, Trustee, Plaintiff,**

**v.**

**Robert Lee BLACK, C. C. Cook and Farmers Bank, Defendants.**

**Bankruptcy No. 381–01695.
Adv. No. 381–0502.**

United States Bankruptcy Court,
M. D. Tennessee.

April 14, 1982.

John R. Phillips, Jr., Gallatin, Tenn., for defendant, C. C. Cook.

Richard Cummings, Gallatin, Tenn., for defendant, Farmers Bank.

Robert Lee Black, pro se.

Larry Stewart, Trustee, Nashville, Tenn., for plaintiff.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was commenced by the trustee's complaint to revoke the debtor Robert Lee Black's discharge and to determine the rights of the parties in the proceeds of a 1977 Lincoln Mark V automobile previously owned by the debtor. A hearing on this matter was held on January 7, 1982. After consideration of the evidence presented at this hearing, stipulations, exhibits, briefs of the parties and the entire record, this court finds that the debtor's discharge should be revoked and that the proceeds obtained from the sale of the Lincoln Mark V automobile are property of the estate and should be turned over to the trustee.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The debtor Robert Lee Black filed a voluntary Chapter 7 petition for relief in this court on May 26, 1981. The debtor did not list the 1977 Lincoln Mark V automobile as an asset of his estate in his Statement of Schedules and Affairs. The order and notice for the debtor's meeting of creditors was sent to all parties in interest on June 10, 1981. Although the defendant C. C. Cook was listed as a creditor on the debtor's schedules, he did not receive notice of the meeting of creditors since his address was incorrectly listed.

On June 18, 1981, approximately three weeks before his meeting of creditors, the debtor obtained a loan of $2,900.00 from the defendant Farmers Bank. This loan was secured by the 1977 Lincoln Mark V automobile and the debtor's household furnishings. Farmers Bank relied on the certificate of title for proof of the debtor's ownership of the automobile. The defendant C. C. Cook signed as a surety on this loan. Neither Cook nor Farmers Bank had knowledge of the debtor's pending bankruptcy proceedings.

The debtor's meeting of creditors was held on July 6, 1981. At this time, the debtor reiterated that his bankruptcy schedules contained a complete list of his assets.

At the hearing on January 7, 1982, the debtor testified that he sold the 1977 Lin-

coln Mark V automobile to Harold Butler prior to the filing of his bankruptcy petition. He did not, however, change the certificate of title to reflect that Butler was the owner of the automobile. Shortly after the debtor filed his bankruptcy petition, Butler returned the automobile since the debtor needed money to pay off his debts.

The debtor further testified that, when he obtained the $2,900.00 loan, he represented to Farmers Bank that he was the owner of the automobile. Before the defendant Cook signed as a surety on the debtor's loan, the debtor and Cook went to the Department of Safety in Nashville to verify that the certificate of title to the automobile was in the debtor's name. The debtor stated that he had told the attorney who prepared his bankruptcy petition about the car but that the attorney had failed to list the car as an asset of the debtor's estate.

On October 5, 1981, the automobile in question was sold for $3,669.00. After the deduction of expenses, the net proceeds from the sale totaled $3,297.85. These funds were placed in an interest-bearing account pending the final resolution of this proceeding.

The trustee initially seeks a revocation of the debtor's discharge pursuant to 11 U.S.C. § 727(d)(2). Section 727(d)(2) provides in pertinent part:

"(d) On request of the trustee or a creditor, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

.    .    .    .    .

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of, or entitlement to, such property, or to deliver or surrender such property to the trustee; . . . ."

■ In order to revoke the debtor's discharge, the trustee must establish that the debtor has acquired or become entitled to property of the estate *and* has knowingly and fraudulently failed to report or deliver

this property to the trustee. Both elements of this test must be satisfied. A debtor's discharge cannot be revoked solely on the basis that the debtor failed to inform the trustee of his receipt of property of the estate. The party seeking revocation must additionally prove that the debtor *knowingly and fraudulently* concealed this information from the trustee. 4 Collier on Bankruptcy ¶ 727.15[4], at 727–100 (15th ed. 1981).

■ The term "knowingly and fraudulently" requires that the debtor be guilty of such acts as would sustain a civil action for fraud or deceit. The debtor's actions must have been taken with the knowing intent to defraud the trustee, or be so reckless as to justify a finding that he acted fraudulently. *In re Orenduff*, 226 F.Supp. 312, 314 (D.C. N.D.Okl.1964); *In re Leach*, 197 F.Supp. 513, 518–519 (D.C.W.D.Ark.1961); *Race v. Zahralddin*, 1 B.R. 621, 623–624 (Bkrtcy.E. D.Va.1979). This fraudulent intent may be inferred from the facts. *See, e.g., In re Scher*, 21 F.Supp. 441 (D.C.E.D.N.Y.1937); *In re Monsch*, 18 F.Supp. 913, 915 (D.C.E.D. Ky.1937); *In re Hochberg*, 17 F.Supp. 916, 919 (D.C.W.D.Pa.1936); *Vela v. Beard*, 59 Tenn.App. 544, 442 S.W.2d 644, 651 (1968); *Jones v. Seal*, 56 Tenn.App. 593, 409 S.W.2d 382, 384–385 (1966); *Anderson v. Nichols*, 39 Tenn.App. 503, 286 S.W.2d 96, 102 (1955). *See also* 4 Collier on Bankruptcy ¶ 727.04, at 727–50 (15th ed. 1981).

■ The proof in this case mandates a finding that the debtor fraudulently concealed his reacquisition of the 1977 Lincoln automobile from the trustee. The debtor testified that he sold this automobile to Harold Butler prior to the filing of his bankruptcy petition. The debtor, however, admits that he never changed the certificate of title to reflect that Butler was the owner of the automobile. The debtor filed his bankruptcy petition on May 26, 1981. Butler thereafter supposedly returned the automobile to the debtor since the debtor was in desperate need of money. On June 18, 1981, the debtor procured a $2,900.00 loan from Farmers Bank which was partially secured by the 1977 Lincoln automobile.

The debtor C. C. Cook signed as a surety on this loan. The debtor did not advise either Farmers Bank or Cook of his pending bankruptcy proceedings. At his subsequent meeting of creditors on July 7, 1981, the debtor failed to inform the trustee of his reacquisition of the 1977 Lincoln automobile.

Under these circumstances, the burden is on the debtor to establish that the transfer of the automobile to Butler was a *bona fide* sale. *See In re Hochberg*, 17 F.Supp. at 919; *McCue v. Galbraith*, 17 B.R. 302 (Bkrtcy.M.D.Fla.1982); *Anderson v. Nichols*, 286 S.W.2d at 102. The debtor has not met this burden. The debtor presented no evidence to collaborate his testimony regarding the purported sale. He did not produce a bill of sale confirming the transaction nor did he offer the testimony of Harold Butler, the alleged buyer of the automobile. The court can only conclude that the debtor never intended to sell this automobile. This finding is reinforced by the debtor's reacquisition of the automobile for no apparent consideration shortly after the filing of his bankruptcy petition, his concomitant use of the automobile to secure a loan from Farmers Bank, and his failure to inform either Farmers Bank or C. C. Cook of his bankruptcy proceedings. The debtor's actions constituted a knowing and fraudulent concealment of property of the estate from the trustee and therefore the

debtor's discharge must be revoked pursuant to 11 U.S.C. § 727(d)(2). The court's revocation of the debtor's discharge has no effect on the administration of the debtor's estate other than denying the debtor the benefits of the discharge.

The trustee in this case also seeks to avoid Farmers Bank's security interest in the 1977 Lincoln automobile. Since the court has determined that the debtor never relinquished ownership of the automobile, the automobile became property of the estate upon the filing of the debtor's bankruptcy petition pursuant to 11 U.S.C. § 541(a)(1). *See generally Rehkopf v. Brown (In re Rehkopf Mattress Sales, Inc.)*, 479 F.2d 67, 70–71 (5th Cir. 1973). Farmers Bank's security interest in the debtor's automobile was created subsequent to the filing of the debtor's petition.

The trustee may pursuant to 11 U.S.C. § 549 avoid any post-petition transfer of property of the estate, subject to the narrow exceptions set forth in § 549.[1] The transfer of personal property in this case does not come within the exceptions listed in § 549 and therefore may be avoided by the trustee. As one leading commentator explained:

" . . . The typical transferee of personalty . . . will not be protected under Section 549. This is true with respect to [the]

1. 11 U.S.C. § 549 provides in pertinent part:
    "(a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—
    (1) that occurs after the commencement of the case; . . .
    (b) In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.
    (c) The trustee may not avoid under subsection (a) of this section a transfer, to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value or to a purchas-

er at a judicial sale, of real property located other than in the county in which the case is commenced, unless a copy of the petition was filed in the office where conveyances of real property in such county are recorded before such transfer was so far perfected that a bona fide purchaser of such property against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of such good faith or judicial sale purchaser. A good faith purchaser, without knowledge of the commencement of the case and for less than present fair equivalent value, of real property located other than in the county in which the case is commenced, under a transfer that the trustee may avoid under this section, has a lien on the property transferred to the extent of any present value given, unless a copy of the petition was so filed before such transfer was so perfected."

vulnerability [of] all transferees of personalty under Section 549 and reflects a harsh line drawn by the Code between transferees of real and personal property. The only remedy of a transference [sic] of personal property in the vast majority of cases will be a general unsecured claim against the estate under Section 502(h)."

4 Collier on Bankruptcy § 549.01, at 549–8 —549–9 (15 ed. 1981). *See generally Gruner v. Abbott & Cobb, Inc. (In re P & Z Island Farms, Inc.)* 478 F.Supp. 529, 532–533 (D.C.S.D.N.Y.1979).

The provisions of § 549 of the Bankruptcy Code are clear and explicit. By the enactment of § 549, Congress determined to permit the trustee to avoid all post-petition transfers subject to certain exceptions which are not relevant to this case. In commenting on the trustee's power to avoid post-petition transfers under the former Bankruptcy Act, the Fourth Circuit Court of Appeals observed:

"It is obvious that the intent of this enactment is to invalidate transactions not granted specific protection under the Act and thus put to an end the confusion theretofore existing in the decisions. There is almost always some injustice or hardship which attends transactions occurring after the filing of a petition in bankruptcy between the bankrupt, acting wrongfully, and an innocent third person, because the loss must fall either upon the third person or upon the creditors of the bankrupt. Whether the line which has been drawn is the best possible solution of the problem is not for the courts to say. The line has in fact been drawn by competent authority and it is no longer necessary for the courts to make the attempt, which has not been conspicuously successful in the past, to decide cases on the facts as they arise and to draw a fine distinction between transactions which should be protected and those which should not."

*Lake v. New York Life Insurance Co.*, 218 F.2d 394, 399 (4th Cir. 1955).

Even though the Fourth Circuit's decision was based on § 70 of the former Act, its analysis remains persuasive. The trustee may, therefore, avoid Farmers Bank's post-petition security interest in this automobile.[2]

Accordingly, the court will enter an appropriate order revoking the debtor's discharge and requiring that the proceeds obtained from the sale of the 1977 Lincoln automobile be turned over to the trustee to be distributed as property of the estate.

IT IS SO ORDERED.

---

2. The defendants also contend that the provisions of 11 U.S.C. § 546(b) prevent the trustee from avoiding the post-petition transfer in this case. Section 546(b) provides in pertinent part:

"(b) The rights and powers of the trustee under section . . . 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement."

The legislative history of § 546(b) clearly states that the "rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, *and that perfection relates back to a date that is before the commencement of the case.*" (Emphasis added.) H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 371, *reprinted in* [1978] U.S. Code Cong. and Ad. News 5787, 5963, 6327; Sen.Rep.No. 95–989, 95th Cong., 2d Sess. 86, *reprinted in* [1978] U.S.Code Cong. and Ad. News 5787, 5872. *See also Connecticut v. Leach*, 8 Bankr. Ct.Dec. 587, 590, 15 B.R. 1005 (Bkrtcy.D.Conn. 1981); *ATC Systems, Inc. v. Valairco, Inc.*, 9 B.R. 289, 292–293 (Bkrtcy.D.C.N.J.1981). Since the security interest in this case was not created until after the filing of the debtor's bankruptcy petition, § 546 does not preclude the trustee from avoiding this post-petition transfer.