**In re Richard & Victoria SCHWARTZ, Debtors.**

**Diane M. PUCKHABER, Trustee, Plaintiff,**

v.

**Richard & Victoria SCHWARTZ, Defendants.**

**Bankruptcy No. 83–59. Adv. No. 84–81.**

United States Bankruptcy Court, D. New Hampshire.

Aug. 20, 1986.

Diane Puckhaber, Concord, N.H., Trustee.

Eeda Jill Belkin, Nashua, N.H., for debtors.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The trustee in bankruptcy in this case seeks to revoke the discharge of the debtors pursuant to § 727(d)(2) of the Bankruptcy Code on the grounds that the debtors have "knowingly and fraudulently failed.... to deliver or surrender" certain specified property of the bankruptcy estate to the trustee.

The debtors in this case filed their Chapter 7 bankruptcy petition with this court on February 2, 1983. In their bankruptcy schedules they clearly indicated as an asset of this estate an interest they held in a wrap-around mortgage upon a certain residential property. The debtors answered the trustee's question about this asset as the first meeting of creditors held on March 3, 1983 and interim reports filed by the trustee in April 1983 confirmed that the trustee was aware that this was an asset of the estate.

The deadline for filing objections to the discharge of the debtors was fixed by the court as of May 3, 1983. Neither the trustee nor any other party in interest filed any objections to the debtor's discharge and the court accordingly entered an order of discharge as to both debtors on June 7, 1983.

On an interim report dated October 31, 1983 the trustee indicated a continued awareness of the mortgage as an asset of the estate and indicated that she was "still investigating the assets of the estate." For some reason the trustee apparently did not put the parties to the mortgage and the owner of the residential real property in question on notice that she, the trustee, now held the mortgagee's interest under the subject mortgage. The property was sold and the wrap-around mortgage resulted in a distribution from the real estate closing directly to the debtors in the amount of $5,261.50. The debtors received these funds and spent them on various expenses relating to the death of their fathers that occurred at that time, including travel to the states of Kansas and New Jersey and related funeral expenses.

When the debtors' attorney learned of the receipt and disposition of the mortgage funds, she advised the trustee by letter of December 6, 1983 and the trustee and the debtors ultimately agreed on a repayment of these funds into this bankruptcy estate at the rate of $100.00 per month. The record does not disclose how many such payments were made by the debtors to the trustee under this agreement but it is apparent that the trustee has not received any substantial portion of the mortgage proceeds back from the debtors. The debtors claimed they were unable to make further payments.

The trustee ultimately filed a complaint to vacate the discharge on September 7, 1984. When this matter came before the

court for a pre-trial hearing on April 1, 1986 the parties agreed that there was no need for an evidentiary hearing and submitted the matter to the court on the record. The debtors were given an opportunity to file a memorandum of law, which they have done, and the trustee was given an opportunity to file a reply memorandum, which she has declined to do.

On review of the record in this matter, and the legal citations submitted by the debtors' attorney, I conclude that this matter is essentially the same as the issue raised in *In re Lyons*, 23 B.R. 123 (E.D.Va. 1982), and should receive the same ruling, i.e., the trustee is not entitled to have the debtors' discharge revoked under the standards applicable to § 727(d)(2) of the Bankruptcy Code. There is no evidence in this record that the trustee clearly put the debtors on notice that she was demanding an accounting and immediate turnover of any funds received from the mortgage in question. There is also no direct evidence in this record as to the state of mind or intent of the debtors at the time they received and disposed of the funds in question. On these facts therefore the court follows the analysis in the *Lyons* case and concludes that it cannot make a finding of "knowing and fraudulent" intent pursuant to the subject statute.

Accordingly, a final judgment will be entered in this adversary proceeding denying the trustee's request for revocation of the discharge of these debtors. This ruling, however, does not dispose of the independent question as to whether this court should not enter an order under § 105 directing these debtors to pay back all, or some portion, of the funds in question commensurate with their ability to make such payments. The stipulation of the parties to rest on the present record is not sufficient to establish a proper basis for this court to conclude that the debtors do, or do not have, present financial resources and earning capacity sufficient to comply with an appropriate § 105 order. There is no question whatsoever in this record that the funds in question from the mortgage asset were property of the estate and according-

ly must be accounted for. A separate order to show cause will be entered in the case-in-chief directing the debtors to appear at a further evidentiary hearing to show cause why they should not be ordered to pay some, or all, of the funds in question.